521 P.2d 1019

**CONTINENTAL CASUALTY COMPANY,**
Petitioner,

v.

**The INDUSTRIAL COMMISSION of**
Arizona, Respondent,

**John W. Patterson, Respondent Employee,**
**J. R. Norton Company, Respond-**
ent Employer.

**No. 1 CA–IC 939.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 2, 1974.

Rehearing Denied July 22, 1974.

Review Granted Sept. 19, 1974.

Spencer K. Johnston, Phoenix, for petitioner.

William C. Wahl, Jr., Former Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Donald J. Morgan, D. A. Jerome, Phoenix, for respondent employee.

## OPINION

STEVENS, Judge.

The issue presented on this writ of certiorari is whether The Industrial Commission had the authority to grant the claimant "advanced partial permanent benefits" pending a formal loss of earning capacity hearing.

John W. Patterson (hereinafter "claimant") suffered a heart attack while piloting an airplane for J. R. Norton Company (hereinafter "employer"). Thereafter, a blood clot resulting from the heart attack necessitated the amputation of claimant's left leg. The subsequent award of The Industrial Commission stated that the injuries were not compensable. This Court set aside the award, holding that The Industrial Commission was required to make an express finding as to whether the injuries resulted from or were aggravated by an accident in the course of and arising from the claimant's employment. Patterson v.

Industrial Commission, 10 Ariz.App. 421, 459 P.2d 338 (1969). On 5 May 1970 The Industrial Commission entered an award finding the claimant's injuries compensable. Continental Casualty Co. (hereinafter "Carrier") objected and a hearing was held. On 20 November 1970 a Decision Upon Hearing and Findings and Award was filed by the Commission, which provided that the claimant recover " * * * accident benefits (medical expenses) and compensation as may be indicated * * *". This Court affirmed that award on 28 October 1971. Continental Casualty Co. v. Industrial Commission, 15 Ariz.App. 565, 489 P.2d 1267 (1971). On 7 March 1972 The Industrial Commission, having reviewed the record, issued an award stating that the claimant's average monthly wage was $600 per month, that claimant was entitled to medical benefits from and after 7 January 1967 (the date of the heart attack), that claimant was entitled to temporary total compensation from 8 January 1967 through 31 December 1967, and temporary partial benefits from 1 January 1968 until his condition became stationary.

On 20 June 1972 The Industrial Commission issued an award which found that the claimant's condition had become stationary, awarded the claimant specific amounts for his temporary total and temporary partial disabilities and reserved jurisdiction in the Commission to establish what effect the injuries had on the claimant's earning capacity. The award included the following clause:

"10. That pending determination of applicant's loss of earning capacity, if any, the applicant shall be advanced partial permanent benefits from March 1, 1972, until further order of the Commission, on the basis of not more than 55% of the difference between the average monthly wage and $300.00 per month, or the actual amount earned if in excess of $300.00, such payments to be deductible from any future additional benefits which may ultimately be due said applicant."

The carrier filed an objection to this award and a request for hearing, stating as his grounds:

"The Industrial Commission of Arizona has awarded benefits to whic [sic] the applicant is not entitled."

On 14 September 1972 a hearing was held on the objection. After a review of the entire record, on 2 January 1973 The Industrial Commission issued its award, granting the same relief as the 20 June 1972 award, including the interim benefits mentioned above. From this award the carrier sought a writ of certiorari.

The carrier contends that the award granted the claimant excessive benefits. It argues that the claimant had a post-injury job which paid more than his pre-injury job, but that he voluntarily abandoned the post-injury job. Since the carrier rightly denies that it is an unemployment insurer, it seeks to avoid paying benefits which the claimant allegedly could have earned, had he remained on the job. The record shows that the claimant admits he left his post-injury employment "voluntarily", but a closer examination puts this statement in perspective. The claimant testified the pressure involved in the job was intense, that his heart condition was still a source of concern to him and he still had periodic check-ups. The claimant's attending cardiologist excluded strenuous work involving more than six hours of work per day, or which involved standing for more than two hours.

■■ The general rule is that evidence of post-injury earnings raises a presumption of at least commensurate earning capacity, Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967), but such evidence is not necessarily controlling. Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959); Barnard v. Industrial Commission, 91 Ariz. 1, 368 P.2d 749 (1962). One clear exception to the general rule is where continued employment would be deleterious to the claimant's health. Midland-Ross Corporation v. Industrial Commission, 107 Ariz. 311, 486 P. 2d 793 (1971). The hearing officer in the present case determined that the applicant:

"8. * * * has made a conscientious and admirable attempt to rehabilitate himself and find work which he was capable of performing during the period of partial temporary disability."

■■ We find that the record supports this determination. We find further that the hearing officer properly declined to regard the post-injury employment as raising a presumption of no loss of earning capacity.

The carrier next contends that the Commission lacked authority to grant benefits for a permanent partial disability until a formal loss of earning capacity hearing had been held. We find that the Commission did possess the authority.

The statutes applicable to this question were the following sections of A.R.S. § 23-1044, as they appeared at the time of the injury:

"§ 23-1044. Compensation for partial disability; computation

"A. For temporary partial disability there shall be paid during the period thereof, for not to exceed sixty months, sixty-five per cent of the difference between the wages earned before the injury and the wages which the injured person is able to earn thereafter.

$*$ $*$ $*$ $*$ $*$ $*$

"C. In cases not enumerated in subsection B of this section, where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability, but the payment shall not continue after the disability ends * * *.

"D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the

type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

In Kennecott Copper Corporation v. Industrial Commission, 62 Ariz. 516, 158 P.2d 887 (1945), The Industrial Commission had found that the claimant's condition was stationary, but issued an award for temporary partial benefits under § (A) of the statute (§ 56–957, A.C.A.1939, now A.R.S. § 23–1044 above) pending the establishment of the claimant's post-injury earning capacity. The Supreme Court held that the granting of interim benefits was within the authority of the Commission, but that the Commission's findings showed that the injuries in the case were within § (C) of the statute rather than § (A). In any event, the Court concluded that there was no evidence in the record with which to determine the post-injury wages of the claimant under § (D) of the statute, which must be accomplished in awards under either § (A) or § (C).

■ The authority of the Commission to determine that a claimant's condition is stationary and to grant benefits pending the determination of post-injury earning capacity has been subsequently approved by Arizona courts. Whyte v. Industrial Commission, 71 Ariz. 338, 342, 227 P.2d 230 (1951); Minton v. Industrial Commission, 90 Ariz. 254, 257, 367 P.2d 274 (1961). See also Beck v. Hartford Accident & Indem. Co., 107 Ariz. 476, 489 P.2d 710 (1971).

The award for interim benefits in this case was framed in the context of an award for permanent partial disability under § (C), which is consistent with the findings of the Commission and the evidence in the record.

To hold otherwise would mean that once the injured workman's condition has become stationary, the workman could be deprived of the privilege of securing any compensation pending the holding of a loss of earning capacity hearing. Such a hearing might be effectively postponed by seeking a certiorari review of the validity of the award which found the workman's condition to be stationary and which reserved jurisdiction to conduct the loss of earning capacity hearing. In making these comments we recognize that there appears to be a conflict between the cases of Greer v. The Industrial Commission of Arizona, 20 Ariz.App. 559, 514 P.2d 512 (1973), and Terrell v. The Industrial Commission of Arizona, 21 Ariz.App. 139, 517 P.2d 97, written by Department A of this Court and the case of Castillo v. The Industrial Commission of Arizona, 21 Ariz.App. 465, 520 P.2d 1142 (Filed April 16, 1974), written by Department B of this Court.

■ As to the computation of post-injury wages required by §§ (C), (D) and Kennecott Copper Corp., supra, we find that there was adequate evidence in the record to support the amounts awarded for interim benefits. Where the post-injury earning capacity is placed in controversy in determining temporary partial benefits, as it was here, the Commission is *required* to find that capacity. Kennecott Copper Corp. v. Industrial Commission, supra; Hardware Mutual Casualty Co. v. Industrial Commission, 17 Ariz.App. 7, 494 P.2d 1353 (1972). When the evidence of post-injury earning capacity is presented in determining temporary partial benefits, it refers to the claimant's condition before it became stationary. In some cases, that may not be a sufficient basis upon which to base permanent partial disability benefits to a claimant pending a formal loss of earning capacity hearing, but where it finds evidence in the record which satisfies §§ (C) and (D) as to the earning capacity of the claimant during this interim period, we find the Commission to be within its lawful authority.

The award is affirmed.

DONOFRIO, P. J., and OGG, J., concur.